

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MONTANANS FOR COMMUNITY DEVELOPMENT, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> JEFFREY A. MANGAN,** in his official capacity as Commissioner of Political Practices; TIMOTHY C. FOX, in his official capacity as Attorney General of the State of Montana; LEO J. GALLAGHER, in his official capacity as Lewis and Clark County Attorney, <br><br> Defendants-Appellees. | No. 16-35997 <br><br> D.C. No. 6:14-cv-0055 DLC <br><br><br> MEMORANDUM* |

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, Chief District Judge, Presiding

Argued and Submitted April 12, 2018
Seattle, Washington

_____

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* Jeffrey A. Mangan is substituted for his predecessor, Jonathan Motl, as Commissioner of Political Practices, pursuant Fed. R. App. P. 43(c)(2).

Before:    TASHIMA and GRABER, Circuit Judges, and MIHM,*** District Judge.

Plaintiff-Appellant Montanans for Community Development ("MCD") appeals from the district court's grant of summary judgment in favor of Defendants-Appellees on MCD's facial and as-applied First Amendment challenges to certain aspects of Montana's election law. We affirm.

MCD wanted to distribute what it deems pro-job growth mailers that mentioned candidates in upcoming Montana elections. It refrained from doing so because the group would have to comply with Montana's political committee reporting and disclosure requirements. MCD therefore brought these pre-enforcement First Amendment challenges against several political committee reporting and disclosure statutes and their implementing regulations.

1.    As a threshold matter, MCD has standing to challenge most of the reporting statutes and regulations. *See Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014) ("[A] plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a

***    The Honorable Michael M. Mihm, United States District Judge for the Central District of Illinois, sitting by designation.

constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." (internal quotation marks omitted)). MCD may also challenge those regulations that did not go into effect until nine days after MCD filed the operative complaint. *See Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 143–45 (1974) (holding that pre-implementation challenges are ripe where it is inevitable that the law will become effective).

However, MCD does not have standing to challenge MONT. CODE ANN. § 13-37-111(1) & (2), and MONT. ADMIN. R. 44.11.106(3) & (5), which grant the Commissioner of Political Practices ("Commissioner") authority to investigate violations of Montana's political committee and disclosure laws. That MCD will become the subject of an investigation and that the investigation will harm it via release of its confidential information is too speculative to establish standing. *See Laird v. Tatum*, 408 U.S. 1, 13–14 (1972). We thus dismiss the appeal of this claim for lack of standing.

Likewise, MCD cannot assert its discriminatory enforcement claims because they are moot. All of the allegations in the operative complaint relate to former Commissioner Jonathan Motl's discriminatory treatment of the group, but Jeffrey A. Mangan replaced Motl as the Commissioner in April 2017. MCD's bare assertion that Mangan will continue the allegedly discriminatory treatment is not

3

sufficient to maintain the claim. *See Mayor of City of Phila. v. Educ. Equal. League*, 415 U.S. 605, 622–23 (1974). We dismiss the appeal of this claim for mootness.

**2.** All of MCD's justiciable claims fail on the merits. MCD's scattershot complaint and briefing seem to assert three categories of constitutional challenges to Montana's political committee reporting and disclosure laws. MCD contends that the laws are (1) vague, (2) overbroad (i.e., they do not withstand scrutiny), and (3) unconstitutional as applied to MCD. In addressing MCD's claims, "[w]e review only issues which are argued specifically and distinctly in [its] opening brief." *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994).

**3.** All of MCD's vagueness challenges fail. MCD first asserts three arguments against language that appears in multiple statutes and regulations. MCD then attacks language specific to individual statutes and regulations.

As to the language that appears in multiple provisions of Montana's election law scheme, MCD challenges the statutes and regulations as vague on account of using (1) "circular" definitions, (2) the "appeal to vote test," or (3) the word "may."

First, MCD argues that various Montana statutes and regulations are unconstitutionally vague because their definitions are "circular" in that some of the

4

defined terms use at least one of the other defined terms in their definitions. All of Plaintiff's "circular" definition arguments are unavailing because there is nothing inherently vague about definitions referring to one another. Further, in context, the definitions "provide a person of ordinary intelligence fair notice of what is prohibited" or required. *United States v. Williams*, 553 U.S. 285, 304 (2008).

Second, MCD also challenges the "appeal to vote test" and any statute or regulation that incorporates it. The Supreme Court has foreclosed this argument by using the appeal to vote test. *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 324–25 (2010).

Third, MCD challenges various laws for their use of the word "may" in front of a list of factors. MCD argues that "may" means that the Commissioner has complete discretion to consider whatever he wants. MCD's interpretation is illogical and against the plain language of the statutes and regulations. "May" limits the Commissioner to considering only the listed factors.

As to the vagueness challenges to specific language in individual statutes and regulations, MCD's claims also fail. MCD contends that the "electioneering communication" statute and rule are vague because whether 100 recipients can receive a communication is "indeterminable," and because a person "that engages in electioneering communications must guess as to which reporting requirements

5

they are subject to." A person of average intelligence can determine whether an advertisement may reach 100 people, and can read the statutes and regulations to determine which reporting rules apply.

Next, Plaintiff argues that MONT. ADMIN. R. 44.11.605(1) and MONT. ADMIN R. 44.11.605(4) are vague because they are inconsistent and because MONT. ADMIN. R. 44.11.605(4) impermissibly includes an "intent-based" test. While the regulations are not perfectly clear, "uncertainty at a statute's margins will not warrant facial invalidation if it is clear what the statute proscribes 'in the vast majority of its intended applications.'" *See Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1151 (9th Cir. 2001) (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000)).

4. We also reject MCD's challenges to the political committee disclosure laws and filing requirements as overbroad, or not "substantially related" to the state's interest. "[A] campaign finance disclosure requirement is constitutional if it survives exacting scrutiny, meaning that it is substantially related to a sufficiently important governmental interest." *Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1005 (9th Cir. 2010). The Supreme Court has identified three "important" interests "in the context of reporting and disclosure requirements: providing the electorate with information, deterring actual corruption and avoiding

6

any appearance thereof, and gathering the data necessary to enforce more substantive electioneering restrictions." *Yamada v. Snipes*, 786 F.3d 1182, 1197 (9th Cir. 2015) (internal quotation marks omitted).

First, the argument that disclosure laws are overbroad unless they apply only to groups whose major or primary purpose is political advocacy has been rejected multiple times in this circuit. *See Human Life of Wash.*, 624 F.3d at 1009–10; *see also Yamada*, 786 F.3d at 1198–99. Further, the disclosure requirements of filling out a short form and designating a treasurer and bank account are not overly burdensome. *See Human Life of Wash.*, 624 F.3d at 1012–14.

Second, the electronic and repeated reporting requirements survive exacting scrutiny. That the election disclosure and reporting laws might be constitutionally infirm based on a requirement that speakers electronically file reports is absurd, especially in light of the fact that the Commissioner can provide a waiver to those without access to electronic filing. *See* MONT. ADMIN. R. 44.11.302(2). Further, requiring political committees to repeatedly report contributions within two days of making them is substantially related to Montana's important informational interest. Otherwise a political committee could make a flurry of contributions just days before an election, when many people are finalizing their views, without having to report them until after voting has occurred.

Third, the definition of "electioneering communication" and related reporting requirements are not duplicative of the political committee requirements. The definition of "electioneering communications" extends further. *See* MONT. CODE ANN. § 13-1-101(16); MONT. ADMIN R. 44.11.605. Even if electioneering communications only educate the public about a candidate, Montana still has a substantial interest in disclosing to the public who is doing the educating. *See Citizens United*, 558 U.S. at 369 ("Even if the ads only pertain to a commercial transaction, the public has an interest in knowing who is speaking about a candidate shortly before an election.").

Finally, MCD's challenge to the "paid-for" attribution requirement survives exacting scrutiny. *See id.* at 366–67 ("paid-for" attributions subject to exacting scrutiny rather than strict scrutiny). Montana's "paid-for" attribution requirement is narrower than the one struck down in *American Civil Liberties Union v. Heller*, 378 F.3d 979 (9th Cir. 2004), and is more similar to the requirement upheld in *Alaska Right to Life Committee v. Miles*, 441 F.3d 773 (9th Cir. 2006).

**5.**     We reject MCD's as-applied challenges for the same reason that its overbreadth argument fails. Political committee reporting and disclosure laws can extend beyond groups whose major purpose is political advocacy. *See Human Life of Wash.*, 624 F.3d at 1011. Even if MCD's primary purpose is not electoral

8

advocacy in Montana, the political committee reporting and disclosure laws survive exacting scrutiny as applied to the group.

· ● ·

The judgment of the district court is

**AFFIRMED in part and DISMISSED in part.**  Costs awarded to defendants-appellees.